UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK MORIN,<br><br>　　　　Plaintiff,<br>v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social Security,<br><br>　　　　Defendant. | Civil No. 05CV1675 JAH(AJB)<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR REVERSAL AND/OR REMAND [DOC. # 11] AND GRANTING DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT [DOC. # 14]** |

## INTRODUCTION

Plaintiff, through counsel, filed this action pursuant to § 405(g) of the Social Security Act ("the Act"), as amended, 42 U.S.C. § 405(g), to obtain judicial review of a "final decision" of the Commissioner of the Social Security Administration ("defendant") denying plaintiff's claim for Disability Insurance Benefits under the Act. Plaintiff filed a motion for reversal and/or remand and defendant filed an opposition to plaintiff's motion along with a cross-motion for summary judgment. After a thorough review of the pleadings filed by the parties, the entire record submitted in this matter, and for the reasons set forth below, this Court DENIES plaintiff's motion for reversal and/or remand, GRANTS defendant's cross-motion for summary judgment.

//
//

# BACKGROUND

**1.    Factual Background**

Plaintiff is currently 61 years of age and has eighteen years of formal education. AR[1] at 12. Plaintiff has had past relevant work as a medical clerk, utility systems operator, and driver. Id. Plaintiff last worked on April 15, 2000. Pltff's Mot. at 4. Plaintiff alleges disability due to degenerative disc disease, coronary artery disease, hypertension, diabetes, pain neuropathy, retinopathy, and cataracts. AR at 12.

**2.    Procedural Background**

Plaintiff first applied for disability insurance benefits on August 31, 2001, which was denied initially and after reconsideration on July 24, 2002. AR at 11. Plaintiff did not appeal that denial. Id. Plaintiff again applied for benefits on April 8, 2003, initially alleging a disability onset date of April 15, 2000, but later amending that date to July 25, 2002. Id. Plaintiff's second application was also denied initially and after reconsideration on December 5, 2003. Id. Upon plaintiff's request, an administrative hearing was held on December 16, 2004 before an administrative law judge ("ALJ"). The ALJ subsequently denied plaintiff benefits by written decision dated February 26, 2005. The Appeals Council adopted the ALJ's decision on June 24, 2005, rendering the decision final.

Plaintiff, through counsel, filed the instant complaint, seeking judicial review of the ALJ's final decision, on August 24, 2005. Defendant filed an answer and lodged the administrative record with the Court on October 21, 2005. Plaintiff's motion for reversal and/or remand was filed on May 22, 2006. Defendant's opposition to plaintiff's motion for summary judgment and cross-motion for summary judgment were filed on June 20, 2006. The motions were subsequently taken under submission without oral argument. *See* CivLR 7.1

//
//
//
//

---

[1] "AR" refers to the administrative record lodged with the Court.

3.     **The ALJ's Decision**

In a written decision, the ALJ found that plaintiff suffers impairments which are considered severe under the Act but plaintiff's medically determinable impairments do not prevent him from performing any of his past relevant work as specifically performed by plaintiff or as generally performed in the national economy. AR at 17. In so finding, the ALJ explained that plaintiff:

> retains the physical residual functional capacity to lift and carry twenty pounds occasionally and ten pounds frequently; stand and walk at least six hours in an eight hour workday; and sit about six hours in an eight hour workday ... [but] is further limited to occasional climbing, balancing, stooping, kneeling, crouching, or crawling.

Id. The ALJ found that plaintiff's "past relevant work ... did not require the performance of work-related activities precluded by his physical residual functional capacity." Id. In making this decision, the ALJ did not give the opinion of plaintiff's treating physician controlling weight, particularly the treating physician's opinion that plaintiff would be absent from work more than three time per week, and rejected plaintiff's allegations of debilitating pain as not credible. AR at 14-15. Thus, the ALJ concluded plaintiff was not under a disability at any time through the date of the decision.

## DISCUSSION

1.     **Standard of Review**

To qualify for disability benefits under the Social Security Act, an applicant must show that: (1) he suffers from a medically determinable impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and (2) the impairment renders the applicant incapable of performing the work that he previously performed or any other substantially gainful employment that exists in the national economy. *See* 42 U.S.C. § 423(d)(1)(A), (2)(A). An applicant must meet both requirements to be "disabled." Id.

The Secretary of the Social Security Administration has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines whether the claimant is engaged in "substantial

gainful activity." If he is, disability benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If he is not, the decision maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments.

If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the impairment is severe, the evaluation proceeds to the third step, which determines whether the impairment is equivalent to one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Part 404, Appendix 1 to Subpart P. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If a condition "falls short of the [listing] criterion" a multiple factor analysis is appropriate. Celaya v. Halter, 332 F.3d 1177, 1181 (9th Cir. 2003). In such analysis, "'the Secretary shall consider the combined effect of all the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity.'" Id. at 1182 (quoting 42 U.S.C. § 423(d)(2)(B)).

If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work he has performed in the past. If the claimant is able to perform his previous work, he is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant cannot perform his previous work, the fifth and final step of the process determines whether he is able to perform other work in the national economy considering his age, education, and work experience. The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

Section 405(g) of the Act allows unsuccessful applicants to seek judicial review of a final agency decision of the Commissioner. 42 U.S.C. § 405(g). The scope of judicial review is limited. The Commissioner's denial of benefits "will be disturbed only if it is not supported by substantial evidence or is based on legal error." Brawner v. Secretary of Health and Human Servs., 839 F.2d 432, 433 (9th Cir. 1988) (citing Green v. Heckler, 803 F.2d 528, 529 (9th

Cir. 1986)).

Substantial evidence means "more than a mere scintilla" but less than a preponderance. Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997)(citation omitted). "[I]t is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). The court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusions. Desrosiers v. Secretary of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988) (citing Jones v. Heckler, 760 F.2d 993, 995 (9th Cir.1985)). If the evidence supports more than one rational interpretation, the court must uphold the ALJ's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) (citing Allen v. Secretary of Health & Human Servs., 726 F.2d 1470, 1473 (9th Cir. 1984)). When the evidence is inconclusive, "questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary." Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).

Even if the reviewing court finds that substantial evidence supports the ALJ's conclusions, the court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching a decision. *See* Benitez v. Califano, 573 F.2d 653, 655 (9th Cir. 1978). Section 405(g) permits a court to enter a judgment affirming, modifying, or reversing the Commissioner's decision. 42 U.S.C. § 405(g). The reviewing court may also remand the matter to the Social Security Administrator for further proceedings. Id. "If additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990) (quoting Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981)).

**2.   Analysis**

Plaintiff moves for reversal and/or remand on the grounds that (a) the ALJ erred by failing to give controlling weight to the opinion of plaintiff's treating physician and did not provide clear and convincing reasons for rejecting the treating physician's opinion as required; (b) the ALJ's reliance upon the medical expert's opinion, as opposed to plaintiff's treating physician's opinion, was not supported by substantial evidence of record; and (c) the ALJ erred

in denying plaintiff's request to reopen his earlier application for disability benefits.

  a. **Plaintiff's Treating Physician's Opinion**

    1. **Legal Standard**

The Ninth Circuit distinguishes among the opinions of three types of physicians:[2] (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996).

20 C.F.R. § 404.1527(d)(2) provides:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations . . . .

The Ninth Circuit has reviewed, with slightly varied results, the amount of weight that should be accorded a treating physician relative to that which is accorded examining and non-examining physicians. Most decisions appear to apply the general rule that more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. Lester, 81 F.3d at 830 (citing Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987)). The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability. Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).

On the other hand, the Ninth Circuit has also held that the ALJ need not accept the opinion of the treating physician if it is conclusory, brief and unsupported by clinical findings. Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992)(inconsistencies and ambiguities in the treating physician's opinion were specific and legitimate reasons for not accepting physician's opinion.). Furthermore, the ALJ may disregard the treating physician's opinion whether or not that opinion is contradicted. Magallanes v. Bowen, 881 F.2d at 750. In Lester,

---

[2] For purposes of this opinion, the term "physician" or "doctor" includes psychologists and other health professionals who do not have medical degrees. See 20 C.F.R. § 404.1527 (defining "medical opinions" as "statements from physicians and psychologists and other acceptable medical sources," and prescribing the respective weight to be given the opinions of treating sources and examining sources).

the Court clarified this by holding that where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. 81 F.3d at 830 (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1396 (9th Cir. 1991)).

In addition, "even if contradicted by another doctor, the opinion of an examining doctor can be rejected only for specific and legitimate reasons that are supported by substantial evidence in the record." <u>Regennitter v. Commissioner of the Social Security Administration</u>, 166 F.3d 1294, 1298-99 (9th Cir. 1999)(citing <u>Lester</u>, 81 F.3d at 830-31); *see also* <u>Winans</u>, 853 F.2d at 647.  The ALJ can meet the substantial evidence burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretations thereof, and making findings.  <u>Magallanes</u>, 881 F.2d at 751.  The Ninth Circuit does not require that the ALJ "recite the magic words, 'I reject [the doctor's] opinion ... because ...,'" <u>Magallanes</u>, 881 F.2d at 755, but instead, on review, the Court should draw "specific and legitimate inferences," if such can be drawn, from the ALJ's opinion.  <u>Id</u>.

### 2. Analysis

The record reflects that Dr. Terry Fan, one of plaintiff's treating physicians, in a form report entitled "Physical Capacity Evaluation," opined plaintiff had the capacity to perform sedentary to light work, limiting plaintiff to sitting for five hours, standing for two hours, and walking for one hour out of an eight hour workday. AR at 377-79.  In addition, Dr. Fan opined that plaintiff would be absent from work more than three times per week. <u>Id</u>. at 378.  Dr. John R. Morse, an expert witness who testified at the hearing before the ALJ, contradictorily opined that plaintiff had the capacity to perform light work, in that plaintiff could stand and walk at least six hours and sit about six hours during an eight hour workday. <u>Id</u>. at 14, 484-87.  Dr. Morse specifically disagreed that plaintiff would be absent from work three times per week based on his impairments. <u>Id</u>. at 491.

The ALJ, in his written decision, relied upon Dr. Morse's opinion and discounted Dr. Fan's opinion, stating that:

> [i]n coming to a decision the undersigned has determined that it is not appropriate to give the treating physician, Dr. Terry Fan, controlling weight. When a treating physician's opinions are not well documented and are inconsistent with other substantial evidence in the record, then controlling weight

> need not be given. The record does not include treatment notes by Dr. Fan documenting his ongoing treatment of the claimant nor support for why the claimant would be absent from work more than three times per month. Dr. Fan's opinion is not consistent with any other substantial evidence in the record, in particular, that of the medical expert who had the opportunity, unlike Dr. Fan, to review the entire medical evidence of record.

AR at 14-15 (internal citations omitted).

Plaintiff contends the ALJ's rejection does not satisfy the standard required for rejecting a treating physician's opinion, in that the ALJ did not present clear and convincing reasons for the rejection. Mot. at 8-10. In addition, plaintiff contends that the reasons presented by the ALJ were not supported by substantial evidence of record. Id. at 10-19. In opposition,[3] defendant contends that, notwithstanding the fact that the reasons presented for the ALJ's rejection were adequate, the ALJ properly rejected Dr. Fan's residual functional capacity ("RFC") assessment because the assessment could not support plaintiff's disability claim. Opp. at 7.

Defendant points out that Dr. Fan's RFC was based on plaintiff's "'increasing angina'" which was later treated and corrected through bypass surgery in April 2004, culminating in a notation by plaintiff's other treating physician, Dr. Louis Christiansen, indicating plaintiff had "'no angina'" since his bypass surgery. Id. (citing AR at 410, 444, 445, 484). Defendant contends that plaintiff's chest pain cannot be found to result in persistent functional limitations or disability because it has been treated and did not last for twelve continuous months. Id. Thus, defendant contends Dr. Fan's RFC, based on plaintiff's chest pain, became invalid when plaintiff's chest pain was treated and resolved. Id. Defendant therefore argues that, "even if Dr. Fan's opinion were fully credited, it could not support a finding of disability." Id.

This Court agrees with defendant. A review of the record demonstrates that Dr. Fan's RFC assessment which plaintiff contends was not properly credited by the ALJ was based on the fact that plaintiff has had a "past heart attack with stunt placement now with increasing angina." AR at 377. Plaintiff underwent bypass surgery in April 2004 and no chest pain or

---

[3] Although defendant filed an opposition to plaintiff's motion along with a cross motion for summary judgment, the documents contain identical facts and argument. This Court's references are to defendant's opposition even though the same argument can be found in defendant's moving papers.

angina was noted thereafter. *See* AR at 410, 484. Thus, the limitations noted by Dr. Fan in February 2004 based on plaintiff's "increasing angina" could no longer be credited. The ALJ, therefore, properly rejected Dr. Fan's opinion as invalid due to the fact that the limitations were based on a medical issue that was later resolved.[4]

### b. Dr. John R. Morse

Dr. Morse testified at the administrative hearing as a medical expert. *See* AR at 482-91. The ALJ adopted Dr. Morse's opinion concerning plaintiff's residual functional capacity in finding that plaintiff was not disabled. *See* AR at 14-15, 17. Plaintiff contends that Dr. Morse's opinion, which contradicted Dr. Fan's opinion, was not supported by substantial evidence of record. *See* Mot. at 11-17. Specifically, plaintiff claims that Dr. Morse's testimony was riddled with inconsistencies and inaccuracies. Id.

First, plaintiff points out that Dr. Morse cited a consultative examiner's report in support of his opinion that was actually contradictory. Mot. at 11. Plaintiff explains that the consultative examiner opined plaintiff's back pain was "probably radiculopathy" but the medical expert "categorically denied the presence of radiculopathy." Id. (citing AR at 487, 491). The consultative examiner did not state with certainty that plaintiff's back pain was radiculopathy. Instead of "categorically denying" the presence of radiculopathy as plaintiff asserts, Dr. Morse merely found the record did not contain objective findings to support that diagnosis. *See* AR at 491. Thus, Dr. Morse's reliance upon the lack of evidence of radiculopathy was not improper.

Plaintiff next notes that Dr. Morse cited to Dr. Fan's report in support of his analysis which the ALJ ultimately rejected. Id. at 13 (citing AR at 487). This Court's review of the record reveals that Dr. Morse listed seven other documents in the record that fully supported his opinion. AR at 497. Dr. Morse then added four other documents, including Dr. Fan's report, that might also support the analysis, but indicated these documents may not be as supportive because those additional documents "predate[] [plaintiff's] cardiac surgery." Id.

---

[4] Because Dr. Fan's opinion provides no support for plaintiff's disability claim, this Court does not address the issue of whether the ALJ presented clear and convincing reasons to support his rejection of Dr. Fan's opinion.

Thus, Dr. Morse did not fully rely upon Dr. Fan's report because he believed it may not be relevant for the same reason this Court found the report invalid. This Court finds that Dr. Morse's citation to Dr. Fan's report, noting it may not be useful, does not provide proof that Dr. Morse's opinion was unsupported by the record.

Plaintiff also points out that, even though the ALJ claimed Dr. Morse reviewed plaintiff's entire medical file, Dr. Morse's testimony showed a clear lack of knowledge of plaintiff's medical records. Pltff's Mot. at 14. Plaintiff explains that Dr. Morse failed to list some of plaintiff's impairments during direct examination, correcting his error on cross examination. Id. (citing AR at 484). Plaintiff further explains Dr. Morse admitted he "neglected to see" certain evidence concerning several of plaintiff's impairments until "prompted" by the ALJ. Id. at 17-18 (citing AR at 484-85, 488-89). Although Dr. Morse did, as plaintiff points out, provide inaccurate testimony concerning the evidence in plaintiff's record, Dr. Morse did ultimately correct his testimony when the mistakes were presented to him. Thus, this Court finds these inaccuracies provide little support for a finding that Dr. Morse lacked sufficient knowledge of plaintiff's medical records.

In addition, plaintiff claims Dr. Morse testified plaintiff's diabetes was controlled through medication when the record actually contains consistent reports that plaintiff's diabetes was out of control. Id. at 15-16 (citing AR at 397, 415, 408, 409-411, 484). Dr. Morse, in answer to the ALJ's query concerning plaintiff's non-severe impairments, stated that plaintiff's diabetes "should be" controlled by medication. AR at 484. Although plaintiff is correct that the medical evidence indicates out of control diabetes, this inaccurate testimony is not enough, in this Court's view, to discount Dr. Morse's opinion as not credible.

Defendant points out, in opposition, that "Dr. Morse's opinion was supported by the opinions of the non-examining State agency physicians who had reviewed the medical evidence." Opp. at 6. This Court's thorough review of the record reveals that three separate consultative physicians examined the medical evidence and found plaintiff could perform light work as did Dr. Morse. *See* AR at 342-49, 350-59, 360-61. Although Dr. Morse's testimony did, in fact, contain inaccuracies and inconsistencies, his ultimate opinion of plaintiff's capacity

to work was supported by three other physicians who had reviewed plaintiff's medical records. The only contradicting medical opinion is Dr. Fan's, which this Court has already found invalid. Therefore, this Court finds that Dr. Morse's opinion is supported by substantial evidence of record. Accordingly, plaintiff's arguments fail.

### c. Reopening Plaintiff's Earlier Application

Plaintiff also contends that the ALJ committed legal error by denying his request to reopen his earlier filed application for benefits. Mot. at 19-25. Defendant contends this Court lacks jurisdiction to review the ALJ's denial of that request. Opp. at 7. The Commissioner's decision not to reopen a prior, final decision on benefits is not subject to judicial review. *See* Rolen v. Barnhart, 273 F.3d 1189, 1191 (9th Cir. 2001). However, a district court may, in its discretion, review such a decision if a "colorable constitutional claim of [a] due process violation that implicates a due process right either to a meaningful opportunity to be heard or to seek reconsideration of an adverse benefits determination" is presented. Id. A colorable claim is one that is not "'wholly insubstantial, immaterial, or frivolous.'" Id. (quoting Evans v. Chater, 110 F.3d 1480, 1483 (9th Cir. 1997)).

Plaintiff contends that his due process rights were violated when the ALJ declined to address his request to reopen his earlier application. Pltff's Mot. at 20-21. Plaintiff argues that the exception outlined in Rolen applies here because he presents a colorable due process claim. Id. at 21. Plaintiff contends the ALJ's denial of his request to reopen his earlier application based on the fact that there was new evidence to be presented was "arbitrary and capricious" and, thus, a violation of his due process rights. Id. Thus, plaintiff claims he presents a colorable due process claim, providing jurisdiction for this Court's review of the ALJ's denial. Id.

Defendant disagrees. According to defendant, because plaintiff fails to "identify any violation of his right to a meaningful opportunity to be heard or his right to seek reconsideration of an adverse benefits determination," plaintiff has failed to present a colorable due process claim upon which this Court's jurisdiction may be based. Opp. at 8. Defendant points out that plaintiff clearly had a meaningful opportunity to be heard, in that he could have

appealed the earlier decision by requesting a hearing before an administrative law judge where he could have appeared and presented the new medical evidence. Id. at 9 (citing 20 C.F.R. § 404.900 (listing available administrative and judicial remedies); 20 C.F.R. § 404.950 (explaining a plaintiff's right to appear and present evidence before an ALJ)). In addition, defendant points out that plaintiff could have sought reconsideration of the earlier decision. Id. Thus, defendant contends plaintiff presents no colorable constitutional claim based on due process because he had a meaningful opportunity to be heard or to seek reconsideration of the earlier denial of benefits but chose not to do so. Id.

This Court agrees with defendant. The ALJ's decision not to address plaintiff's request to reopen the prior denial of plaintiff's application for benefits is subject to this Court's review only if plaintiff presents a colorable constitutional claim. Rolen 273 F.3d at 1191. Plaintiff presents no facts or arguments to explain why he did not pursue his available administrative or judicial remedies, or why he did not seek reconsideration of that earlier decision. This Court is unpersuaded that the mere mention of a due process violation is sufficient to present a colorable claim. This Court finds plaintiff clearly had a meaningful opportunity to be heard and to seek reconsideration of the prior adverse decision but failed to do so. Thus, this Court finds it lacks jurisdiction to review the ALJ's decision on plaintiff's request to reopen the application. Accordingly, plaintiff's last argument fails.

## CONCLUSION AND ORDER

Based on the foregoing, IT IS HEREBY ORDERED that plaintiff's motion for reversal and/or remand is **DENIED** and defendant's cross-motion for summary judgment is **GRANTED**. The Clerk of Court shall enter judgment accordingly.

DATED: September 6, 2006

HON. JOHN A. HOUSTON
United States District Judge